THE BOROUGH OF FLORHAM PARK, PROSECUTOR AND PLAINTIFF IN ERROR, v. THE BOROUGH OF MADISON ET AL., DEFENDANTS IN ERROR.

EDWARD S. TOOTHE, EXECUTOR, PROSECUTOR AND PLAINTIFF IN ERROR, v. THE BOROUGH OF MADISON ET AL., DEFENDANTS IN ERROR.

LESLIE D. WARD, PROSECUTOR AND PLAINTIFF IN ERROR, v. THE BOROUGH OF MADISON ET AL., DEFENDANTS IN ERROR.

Argued June 28, 1909—Decided November 15, 1909.

1. The act (*Pamph. L.* 1907, *p.* 707), which requires the consent of certain bodies before a sewage-disposal plant can be located in a municipality other than the one desiring the same, applies to all municipalities; it also applies to all proceedings taken to construct such plants, save such proceedings as at the date of the approval of the statute had reached a stage where the work had proceeded so far that the municipality was irrevocably bound to complete the work, or else suffer serious pecuniary loss.
2. The case of *Frelinghuysen* v. *Morristown*, 48 *Vroom* 493, distinguished.

On error to the Supreme Court, whose opinion is reported in 48 *Vroom* 260.

For the borough of Florham Park, *Edward K. Mills.*

For Edward S. Toothe, *Vredenburgh, Wall & Carey.*

For Leslie D. Ward, *Edward D. Duffield.*

For the borough of Madison, *Charles A. Rathbun.*

The opinion of the court was delivered by

REED, J.   These three writs of error bring up three judgments of the Supreme Court affirming the order of a justice

of the Supreme Court appointing commissioners to condemn the lands of one William Toothe, deceased, situated in the borough of Florham Park. The purpose of the condemnation was to secure these lands as a site for a sewage-disposal plant for the borough of Madison.

The facts which preceded the appointment in question are these: The council of the borough of Madison, on May 20th, 1907, resolved to build a sewage-disposal plant according to plans and specifications which had been prepared by two engineers and filed in the office of the borough clerk. On May 27th a communication from the state sewage commissioner to the engineers, approving these plans and specifications, was presented to the council. On June 24th a petition signed by the owners of one-fourth of the assessed valuation of real estate in the said borough was presented to the borough council, who passed a resolution that the borough clerk should advertise the intention of the council to submit the question of building a sewage-disposal plant, to cost not more than $125,000, to the voters of the borough.

On September 7th, 1907, a resolution was passed by council to submit this question to the voters of the borough at an election to be held on October 14th, 1907. Such an election was duly advertised and held, and resulted in the approval of the scheme.

On October 14th, 1907, the council resolved that, in its judgment, it was necessary to issue bonds to the amount of $125,000 under the provisions of the act of 1897. *Pamph. L.,* *p.* 285, § 41. This question also was submitted to a vote of the people, held December 2d, 1907, at which the majority of the voters approved of the bond issue.

On November 11th, 1907, an ordinance providing for the construction of a system of sewers, including a disposal plant, was placed on its first reading by the borough council. On December 9th, 1907, this ordinance was passed.

It also appears that, by resolution, an application was made, in accordance with the statute, to the mayor and council of the borough of Florham Park, and also to the board of health of that borough, for permission to locate a sewage-disposal

plant and beds within the corporate limits of that borough.
It also appears that each of these bodies refused its permission. It appears that an appeal was taken to the state board
of health, and a hearing was had before that board on February 21st, 1908. It further appears that this appeal has never
been decided.

On June 8th, 1908, an ordinance providing for the acquisition of certain lands in Florham Park was passed. On the
same date the failure of the committee appointed to negotiate
for the purchase of these lands was reported, and a resolution
was adopted that an application be made for the appointment
of commissioners to condemn the lands. The application was
made, the commissioners were appointed on August 17th,
1908, and the orders appointing them are those now attacked
by the plaintiffs in error.

There are two main grounds of attack on the orders appointing these commissioners—*first,* that the land to be condemned is already held by the borough of Florham Park for
the purpose of a water-supply, and that the Borough act of
1897 (*Pamph. L., p.* 319, § 70) provides that "no lands,
waters, water rights or other property purchased, condemned
or held by any municipality in this state for the purpose of a
water-supply, shall be condemned or taken under the authority of this act." It appears that the lands involved in
these condemnation proceedings had belonged to one William
Toothe, now deceased; that after the institution of the proceedings to construct a disposal plant, the executors and devisees of William Toothe had conveyed this land to the borough of Florham Park for the purpose of water works for
Florham Park, to be erected within five years, upon condition
that upon the failure to so erect within that time the title to
the land should revert to the grantors. This deed was accepted by the authorities of the borough of Florham Park.

For the reasons stated in the opinion of Mr. Justice Garrison in the Supreme Court, we think (with that court) that
by this conveyance and its acceptance these lands did not
become subject to public uses so charged upon them as to con-

stitute a statutory bar to their acquisition for some other public purpose.

The *second* ground of attack upon the order appointing commissioners to condemn is that there was no consent by the council and the board of health of the borough of Florham Park, and no consent by the state board of health, to the location of a sewage-disposal plant within the territorial limits of that borough. As already stated, each of these local bodies had refused to grant its consent, and the state board of health had not reversed their action.

Now, the act of 1907 (*Pamph. L., p.* 707) provides that "it shall not be lawful to locate any such disposal plant or plants in any municipality other than the one desiring the same, unless the municipality, in which said disposal plant is intended to be located, shall consent and approve thereto; said consent to be given by the governing body of said municipal authorities and board of health of the city, town, township or borough in which it is proposed to locate such disposal plant, upon application in writing for that purpose made, and in case of the refusal of the municipal authorities and local board of health to grant the same, then the municipality making such application may, within thirty days after such refusal, apply to the state board of health, which shall have power to reverse the decision of the local authorities and grant the application for said disposal work."

This act was approved October 29th, 1907. If the above provision is applicable to the proceeding taken by this borough, the power to condemn this land fails because of the refusal of the local authorities of the borough to consent to the location of the disposal plant, and the absence of any reversal of their refusal by the state board of health.

It is insisted, however, by the counsel for the defendant in error that this act does not apply to the borough of Madison. It is said that it is inapplicable because it is an enabling act, that it purports to confer powers which already existed on the council of the borough of Madison, and so could not have been intended to apply to that borough.

I am unable to perceive any substance in this contention. In the act power is first given to municipalities generally to establish and maintain suitable plants for the treatment of sewage; then follows provisions respecting the manner in which this power shall be exerted. The power is to be exercised by the municipal body having charge of the sewers, with the concurrence of the board of commissioners having charge of the finances in the municipality. The power shall be exercised by an ordinance providing for the construction and maintenance of a disposal plant, according to plans to be specified in the ordinance. The board having charge of the sewers is commanded to carry such ordinance into effect. Then there is a limitation upon the exercise of the powers granted, by the provision that in case of a desire to locate a plant in any other municipality, there must be certain consents obtained. Then there is a provision for the acquisition of lands for the plant, and there are various other powers and directions respecting the execution of the scheme.

The act is a general act, dealing with the establishment and maintenance of these plants in all municipalities, and it seems to constitute a complete scheme, and it repeals expressly all inconsistent acts.

Now, the mere fact that the act confers powers which already existed in the council of Madison, is not evincive of a legislative purpose that this power, wherever already existing, shall be exercised in the manner prescribed by the already existing act. The rule is that, wherever the provisions of two acts are repugnant, the latter act becomes the sole rule of conduct, even without an express repealer, and where it is apparent that the legislature in the later act intended to prescribe a single rule respecting certain subjects, the later expression of the legislative will is the controlling one.

That the legislature did not intend that one municipality should have the power to locate a sewage-disposal plant beyond its boundaries without any restrictions, while another municipality should be compelled to obtain the consent of the local authorities of the invaded municipality, or the consent of

the state board of health, seems apparent. Nor was the generality of the title and language of the act of 1907 restricted by the fact that the power conferred was to be exercised through a municipal board having charge of the sewers therein, and a board or commission having charge of the finances of the municipality. The purpose of the act was that the bodies which controlled these two features of the municipal government should unite in the exercise of this power. There is no conceivable municipality that has not some board or body having charge of its finances, and no municipality having use for a disposal plant, which either has not a system of sewers, or some body, common council or board, with power to deal in some respects with the subject of sewers.

Indeed, that the act of 1907 was not limited to cities was decided in the case of *Frelinghuysen* v. *Morristown,* 48 *Vroom* 493, and in that case the argument that the act applies only to municipalities having a municipal board having charge of the sewers therein, and only to municipalities having a board of commissioners having charge of the finances of the municipality, was disapproved.

We are of the opinion, therefore, that the act applies to the borough of Madison.

The counsel for the defendant in error further insists that although this may be true, yet this provision of the act of 1907 is inapplicable to the present proceedings taken by the borough of Madison. The argument in support of this insistence is that the act of 1907, being not retrospective, it appears that at the time of the passage of this act, the present proceedings had so far progressed as to place them beyond the operation of the act of 1907. In support of this position, the decision of this court in the case of *Frelinghuysen* v. *Morristown, supra,* is invoked.

In that case it appeared that at the date of the approval of the act of 1907, namely, October 29th, 1907, proceedings had already been taken to construct a disposal plant under the provisions of the act of 1902. *Pamph. L., p.* 371. An election had been held adopting the provisions of the act; three

contracts had been awarded for the construction of the entire sewerage system, including the disposal work. The work of laying the sewers had been begun early in July, and had progressed rapidly thereafter. Before the act of October 29th, 1907, went into effect, the township of Morristown, in the language of Chancellor Pitney, delivering the opinion of this court, had "committed itself irrevocably to a scheme of public improvement involving the expenditure of upwards of $275,-000, and pledged the public credit accordingly, and had actually commenced the construction of the work." The conclusion reached in that case was that "finding in the act of 1907 no clear expression of legislative purpose to restrict the powers previously conferred upon incorporated towns by the act of 1902, where such powers had already been acted upon to the extent that was true of Morristown when the act of 1907 was passed, we hold that the act of 1907 does not restrict the town of Morristown with respect to the location of its disposal works in the township of Hanover." The point thus decided, as is perceived, was that the act of 1907 did not operate to prevent the completion of a disposal plant within the territory of a foreign municipality, when the constructing municipality had, under a preceding act, irrevocably committed itself to the completion of the scheme, and pledged its credit for that purpose, and had actually began the work.

Now, turning from the situation presented in the Frelinghuysen case, on October 29th, 1907, to the state of affairs presented in the present case on that date, a radical difference in the conditions is observed. The proceedings in the present case had been begun under the Revised Borough act of 1897. *Pamph. L., pp.* 285, 326, § 86 *et seq.* Under the provisions of section 87 of this borough act, the power to acquire lands for the construction of sewers and disposal plants, rested upon a passage of an ordinance by the council, by which ordinance it was to be determined to make and construct such sewers and disposal plants. The statute also required consent to such scheme, in writing, by the owners of the majority of the assessed value of real estate in the borough,

and also an approval of the scheme by a majority of the legal voters in the borough. These were conditions precedent to the exercise of the power to construct sewers and disposal plants. Such consents in writing, of the owners of the real estate had been made, and such an election, at which the proposal to construct was approved, had been held, previous to October 29th, 1907; but the determination by council to build a sewer or disposal plant, expressed in an ordinance was required before the municipality became committed to the exercise of the power to construct such a plant. Such an ordinance was not passed until December 9th, 1907, over a month after the statute of 1907 became operative. So, on October 29th, 1907, no irrevocable step had been taken in the construction of the plant. No ordinance had been passed, and of course no contracts had been executed, no bonds issued, and no work done. It is thus manifest that the situation in this case is markedly different from that which existed in the Frelinghuysen case. We think the moment the act of 1907 became effective, it at once arrested all proceedings in the scheme presented at least until the provision of that act respecting the consent required as a basis for the location in another municipality of a disposal plant, was complied with.

It may be remarked that it is not intended to decide that even if the ordinance had been passed before October 29th, 1907, but no contracts had been executed, no property bought, no money expended nor bonds issued before that date, the operation of the act of 1907 would have been excluded. The question in each case is whether the execution of the scheme for improvement had so far progressed on October 29th, 1907, that the legislature cannot be deemed to have intended that the scheme should be arrested, and the municipalities subjected to a loss of the money expended for work or property which might become useless, or subjected to loss from broken contracts, or the sale of bonds, or from other acts committed in reliance upon the previously existing statute.

The judgment of the Supreme Court should be reversed, and the record remitted that the order may be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, REED, TRENCHARD, BERGEN, MINTURN, BOGERT, VREDENBURGH, GRAY, DILL, JJ.   11.